oral argument not to exceed 15 minutes for the appellant, 10 minutes for the amicus curiae, and 25 minutes for the appelee. Peter Bormuth for the appellant. Thank you, your honors. It's a pleasure to be here in the city of Nicholas-Longworth. May it please the court, Peter Bormuth, the appellant. We're here to determine if the district court erred by ruling the government officials themselves may lead prayers and coerce audience participation during the course of an official government proceeding. I would argue that this issue has already been conclusively decided by the courts. In Engle, the Supreme Court said it is neither sacrilegious nor anti-religious to say that each separate government in this country should stay out of the business of writing or sanctioning prayers, official prayers. In Bacchus v. Palo Verde Unified School District, the Ninth Circuit said that school board officials opening meetings with prayers, solemnizing school board meetings in the name of Jesus displays the government's allegiance to a particular sect or creed. In North Carolina Civil Liberties Union Legal Foundation v. Constangi, the Fourth Circuit ruled that a judge who opened court with a prayer for a judge to engage in prayer in court entangles the government and governmental and religious functions to a much greater degree than a chaplain praying before the legislatures. I would argue that there's no intrinsic difference between an elected school board official, an elected judge, or an elected county commissioner. In the course of offering these prayers, there's endorsement and advancement of the Christian religion, and there's excessive entanglement when a government official composes, recites, edits, and gives these prayers. Is there a special test for legislative prayers because of the Supreme Court's decisions in Marsh and Town of Greece? Marsh and Town of Greece specifically looked at legislative prayers by either a paid chaplain or by guests, guest chaplains or guests from the community. They never looked at legislator as prayer giver themselves, but the Supreme Court in Greece discussed legislative practices and made, the plurality opinion made numerous statements to indicate that such a practice is unconstitutional. The court held that legislators should not act as supervisors or censors of religious speech and should neither edit nor approve prayers in advance. Would it make a difference to you if the commission in the county of Jackson were more religiously diverse? I mean, right now, all the commissioners are Christian, but if they were, if you had some Jewish members or Muslim members, if they were religiously diverse, would your argument be different? No, Your Honor, because I believe any prayer by a government official in that setting, in that governmental setting, is a per se violation of the Establishment Clause. Also, the county of Jackson is 70% roughly Christian, and to my knowledge, there has never been a Jewish, a Muslim, a pagan commissioner. So during the entire time that I have been involved in local politics in Jackson, Michigan, every single prayer before the county board of commissioners has been Christian. I believe that two other courts have considered this issue since the ruling in Greece, and both of them held that it was unconstitutional practice. In the memorandum opinion in Hudson v. Pennsylvania County, the district judge held, in sum, the active role of the Pennsylvania County Board of Supervisors in leading the prayers and, importantly, dictating their content, is of constitutional dimension and falls outside of the prayer practices approved in the town of Greece. So he did not remove fully the injunction that had been placed. And in Lund v. Rowan County, when considering facts very similar to the instant case, the district judge held, under the board's practice, the government is delivering the prayers that were exclusively prepared and controlled by the government, constituting a much greater and more intimate government involvement in the prayer practice than at issue in town of Greece. The commissioners here cannot separate themselves from the government. That is the issue before you today. Now, the court in town of Greece also held that the prayer opportunity cannot be exploited to advance a particular religion. But as you noted, Judge Griffin, there's only been prayers in one religious denomination's name through the entire time that I've been attending the county commissioners. Every prayer has been Christian. This is majority rule in religion. This is advancing the Christian religion. It happens month after month after month. One commissioner actually acknowledged this. When there was a proposal by Michael Overton, the administrator, to set up a similar policy as town of Greece had, this one commissioner, the commissioners rejected it unanimously, but this one commissioner acknowledged, every board member here who gets up there and says a prayer during invocation, we end our invocations in the name of Jesus Christ. Every single one is Christian. The district court found that this majority rule in religion was not an error, was not a problem. The district court suggested that we should resort to elections to solve this problem. I believe the establishment clause was inserted into the Constitution explicitly to prevent that. There are some issues that it withdrew from electoral activity. And I believe that Justice Jackson, writing for the court in West Virginia Board of Education v. Barnett, said, the very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy and to place them beyond the reach of majorities and officials, and to establish them as legal principles to be applied by the court. I note when I walked in this building today at the entrance, I had to use the Bill of Rights as posted there. I ask that you uphold it. The court in town of Greece also found that the government must maintain a policy of non-discrimination. The town of Greece policy was that any minister or any person could come and give an invocation. I believe they had one Jewish member, not a rabbi but a Jewish secular person, come and give an invocation, and one Wiccan was allowed to. And Wiccans and pagans such as myself are almost synonymous religions. The Jackson County Commissioner said, if someone from the public wants to come before us and say they are an ordained minister, we'll have to allow them. That was one of the comments they used in rejecting Michael Overton's policy, or, you know, proposed policy. The present case shows that there's discrimination. They deliberately want to exclude anyone but Christian prayer givers. That violates the holding in town of Greece. There's discrimination here. The town of Greece also ruled that coercion or its absence was a decisive factor. The town of Greece, the plurality opinion said the analysis would be different if town board members directed the public to participate in the prayers. Every time I go, Chairman Shotwell or one of the commissioners says, all rise and assume a reverent position. I presume assuming a reverent position means bowing your head because that's what everyone does. Please rise. All rise. Would you please rise. You have the citations. I know you're aware of them. But it goes on. All rise and assume a reverent position. Please bow your head. Bow your heads with me, please. Please bow your heads. I mean, the last one occurred, that was on October 21st, 2014. Does the word please mean that it's at the discretion of the audience whether or not to do it? I am the only person who does not rise. So you think it's the equivalent of a command? I think it's the equivalent of a command. Chairman Shotwell, who, you know, chairs the meetings, when he says this meeting is now in order, please be silent, that's a command. No one speaks after that. I think please rise is a command as well. We open the court with that. And I notice you did rise this morning, which I appreciate it, but our court officers, please rise as we walk in. And then the court officer says, God save the United States and this honorable court. Is that much different than that? Well, yes, the court officer is not an elected government official. That's also one of those, like legislative prayer by a guest chaplain or by a paid chaplain, it's one of those exceptions to the Establishment Clause because it's been a tradition that's been carried on for a long time. I want to get to that point as well, the idea of tradition. There is not a tradition in this country of government officials, of elected judges, of elected school board members, of elected county commissioners, of elected city council members giving prayers. That was not the case at the time when the Constitution was passed. I hate to interrupt you, but we have the red light system, which shows that your time is up, but we appreciate it. I don't know if you saved any time for rebuttal. Did he? Okay, so you'll have your rebuttal time. Your Honor, I've reserved two minutes for rebuttal. Fine. Thank you, Your Honor, and may it please the Court. Although we agree with Mr. Bormuth that the county commission's practices are unconstitutional, our theory is a bit narrower than that advanced by Mr. Bormuth. We agree with Judge Moore that the standards set forth in Marsh and Town of Greece controls in this case, but there are three aspects of the county commission's practices that go further and violate the guidance set forth in those decisions. The first aspect is that unlike in Town of Greece, it's the county commissioners themselves that are instructing audience members to participate in the prayers. Mr. Bormuth mentioned instructions to rise, to bow your heads, to assume a reverent position, and although sometimes they say please, many other times they don't. Many other times, just to quote a few, October 20th. Before you move on, the distinction between a chaplain and the commissioners themselves you say is important. You are aware of the cases before Town of Greece in the Fourth, Eleventh, and Ninth Circuit that held that prayers by the town officials did not violate the Establishment Clause. There was one opinion written in the Fourth Circuit by Justice Sandra Day O'Connor that specifically says that there is no distinction. How do you reconcile those cases? I would say two things. First of all, all of those cases predated Town of Greece, and Town of Greece, when dealing with the coercion argument, first of all the court said that's another issue. What opinion is the controlling opinion on coercion? Before we get to that, tell me why that distinction makes a difference to you when it did not seem to make a distinction for the Fourth, Eleventh, and Ninth. Yes, Your Honor. I think the distinction matters because the concern here with respect to coercion is that if I'm appearing before the county commission and in two or three minutes I'm going to ask for something that's important to me and perhaps important to me financially, that if the decision maker, my decision maker, not an invited chaplain, not even a paid chaplain, but the actual decision maker is instructing me to do something, I'm going to feel far more compelled to follow their instructions than if it's a guest chaplain or even a paid chaplain who won't be making any decisions during the meeting. Even though this is only one of, I'm not sure how many county commissioners they have in Jackson, but one of five or one of seven or one of nine? I mean, it's only one of the numerous commissioners. I think that he or she has the sway. It's a little bit of a stretch, isn't it? Well, I don't think so, Your Honor, for a couple of reasons. First of all, because they're rotating over, if you attend a series of meetings, as someone like Mr. Moormuth does, you're going to hear those instructions from each of the commissioners. But beyond that, many of the instructions come from the chairman himself. In fact, in many instances, even when a different commissioner is actually delivering the prayer, the chairman sitting on the dais will instruct everyone to rise, in some cases to assume a reverent position. Then the prayer will be delivered by one of the commissioners, sometimes adding his or her own instructions. And I think the instructions from the chairman as the presiding officer in the meeting, I think, carry even greater weight. Because I think, especially when it's the chairman not delivering the prayer, it suggests a certain formality, a procedural formality, because this is the person running the meeting. This is the person directing the meeting, calling the different segments. And so I would say that a direction from the chairman is even more important. I do want to turn back to Town of Greece. First of all, Judge Griffin, as to your question as to what is the controlling opinion, with respect to coercion, I believe that Section 2B, the plurality authored by Justice Kennedy and joined by two other justices, is controlling. How could it be? It's broader than Justice Thomas' opinion, which interprets coercion as legal coercion. Legal coercion, the three in the plurality, Justice Alito, the Chief Justice, and Justice Kennedy, would agree with legal coercion, but they would go farther. Their opinion is broader than Justice Thomas' legal coercion standard, because they look at the coercion of a person in the audience. And they only have three votes for that coercion standard. And when you only have three justices subscribing to a standard, it's hard for me to say that that is controlling. With respect, Judge Griffin, in the context of Town of Greece, the three-judge plurality was actually the narrower opinion because the holding of the court was that there was no coercion. The broader holding by Justice Scalia and Justice Thomas was that you could never have coercion absent legal penalty. That is narrower. His standard of coercion, Justice Thomas' is much narrower, of legal coercion, and that is assumed in Kennedy's opinion, which would agree that, yes, legal coercion is coercion, too, but Kennedy would broaden it to other things that Thomas and Scalia did not agree with. So to say you have five votes for this standard of coercion that Justice Kennedy wants, I don't see five votes for it. With respect to Judge Griffin, so first of all, you had the four dissenters who would have found coercion on the facts of Town of Greece. Can you piggyback them? I don't think you can. But I don't think you even need to, because although the standard as articulated by Justice Thomas and Scalia would have found coercion on fewer things, I think you have to look at that in light of the outcome of the case. The outcome of the case was there was no coercion. And so then when looking at whether you call it broad or narrow, you say, why was there no coercion? In the context of Town of Greece, the broader holding was from Justices Thomas and Scalia. They said you could never have coercion absent formal legal compulsion. The plurality said sometimes you can, but not in here. And so within the context of ruling against the plaintiff in Town of Greece, the narrower way to rule against the plaintiff was to say, maybe you could have coercion absent legal penalty, but you don't in this case. But what that plurality did say, and we do submit that it is the controlling plurality, is that the analysis would be different if town board members directed the public to participate in the prayer. And that's exactly what's going on here. It's town board members meeting after meeting after meeting after meeting, many times the chairman of the commission that is providing that instruction. And that was the distinction between Town of Greece and in this case. And it's a distinction that makes sense. As I said earlier, I'm not going to be asking the chaplain for something five minutes after the prayer. But I am going to be asking members of the commission, in fact, perhaps the chairman. In addition to the instructions from the commissioners, I think there are other specific facts that make this case go beyond Town of Greece. First of all, there's evidence. Before you go to those specific facts, how would you explain how the test is applied from Town of Greece? Let's assume that we would agree that the three members, the three justices, is the controlling test for which we'll assume your argument that the argument by Justice Thomas would not be a subset of that. And as not a subset of that, then it's not the controlling opinion. So let's assume that. Then how does that test work? Is there a totality of the circumstances that is the entirety of the test? Or is there some sort of coercion question based on historical prayer practices in America that is preliminary to the application of a totality type test? I read Town of Greece as setting forth two different sets of factors to look at. There's the question of, is the prayer opportunity being exploited to advance Christianity? Perhaps I'll discuss that in my rebuttal. And that was discussed in Section 2A of the opinion. And then in Section 2B, they treated the argument as a separate, independent coercion argument. I would argue either one of those violates the Constitution. And here, when you have both, the Constitutional violation is even clearer. You've used up your time. But you were going to have three points. One was that it was the commissioner. Could you just state briefly point two and point three so we know where you were going to go but cannot? Thank you, Judge Moore. The second point was specific evidence of exploitation of the opportunity to advance Christianity, including declining to create an outside chaplain policy for specific fear that non-Christian viewpoints would be allowed, as well as directing the prayers to members of the audience. Is that in the record? Or where do you come up with that? So if you look at the meeting, the November 12, 2013 Personnel Commission meeting, we cited it in our brief. And I believe under Federal Rule 201, you can take judicial notice of what was said. Not in the district court record? It is not. I don't believe it's specifically in the district court record. Our appeal is usually limited to the district court record. Well, Federal Rule 201 allows you to take judicial notice of Is there a motion for us to do so? I don't believe a motion is required. And in fact, in the court's decision in 2008, United States v. Torres Ramos, the court sua sponte looked at juror questionnaires that had not been put in the record. And the comments that were made at this November 2013 meeting It's kind of hard for us to reverse a district court on evidence that wasn't presented to them. That's one of my problems. Well, so there was actually a newspaper coverage of that meeting that is in the record. That was an exhibit in Mr. Bormuth's, I believe, either his motion for summary judgment or his opposition. And I think the comments which are elaborated show that there's concern with, as Mr. Bormuth pointed out, inviting outside speakers creates the risk that we have someone else who's a minister who might pray in a way that we don't like. And so that and other evidence which we discuss in section 1 in our brief goes to the exploitation. The final point is evidence of disparagement and retaliation against religious objectors. That when Mr. Bormuth objected to the prayers, one of the commissioners actually turned his back on him. And when the lawsuit was filed, a commissioner described the lawsuit as, quote,  and an attack on Jesus Christ, period. And that shows you not only that religious objectors will be disparaged and perhaps retaliated against, but it also shows you that the county commission views this prayer opportunity not simply as a way to solemnize their meetings, but as a way to advance Jesus Christ. And that's precisely what Town of Greece said the purpose is not supposed to be. And that's why, unlike in Town of Greece, these practices are unconstitutional. We say that all the commissioners are Christians, some of them Roman Catholics, some of them Presbyterians, some of them Congregationalists. I mean, do we know what religion they are other than overall Christians? I don't know the answer to that. And our theory doesn't usually, I mean, you often have disputes even within Protestants between different sects of religions. But OK, we don't know that. I mean, do we know if there are Roman Catholics? I don't know that, Judge Grisham. Our theory does not turn on the religious composition of the commission, per se. It turns on the various factors of identifying the directions to participate, the exploitation to advance Christianity. It could just as well have been exploitation to advance Islam or Judaism or Hinduism. You know, the city of Hamtramck, I read, now has a majority on their city commission that are Muslims. And I suppose if this same practice were in place in Hamtramck, that each member of the city commission could open the session with a prayer, that most of the prayers would be Muslim prayers and maybe a Christian prayer or whatever the other religions are. But in your view, that would be unconstitutional as well? Certainly, if there were instructions from the chairman to now face Mecca and pray, if there were evidence that the prayer practice was being used as a way to promote Islam, to advance Islam or some other religion, then it would be. Again, our argument doesn't turn on the specific religious beliefs of the commissioners. It turns on the overall circumstances of the practice. And the circumstances of this practice go well beyond that of town of Greece. But if the commissioners were more religiously diverse, I mean, would your argument still have the same force? I think the inference that the goal was to advance Christianity might be weaker if there were more religious diversity. But some of the other things, the instructions to all rise, bow your head, and assume a reverent position, I think, is the same whether the commissioner is Christian, Jewish, Muslim, Hindu, or anything else. Because if I am in the audience and I do not want to join or assume a reverent position of a prayer in that particular tradition, then that coercion is a problem. If I were disparaged for declining to participate or for objecting to the practice, that too would be the same no matter what the beliefs of the commissioner. I agree that it might be harder to show exploitation to advance a single religion if all of the commissioners were of different religions. But when there's other evidence here of the effect of advancing Christianity, and it also turns out that all of the commissioners are Christians and most of the prayers are Christians,  Thank you. Thank you, Your Honor. Thank you. Excuse me, Your Honors. Thank you. Richard McNulty on behalf of Jackson County. Your Honor, the practice of Jackson County of opening its sessions with the Pledges of Allegiance and an invocation given by one of nine commissioners on a rotating basis is wholly consistent with the legislative prayer tradition set forth in Greece and in Marsh. With respect, and there are two views here and I'm trying to address both of them. Mr. Bormuth is taking the position that the prayer practice is outside of the legislative sphere and as such Marsh and Greece should not apply or the standards set forth in Marsh and Greece should not apply. With respect to that, we would respectfully disagree and we would set forth that the prayer practice of members giving prayers or invocations prior to a legislative session is historically as significant as having agents of the legislature, i.e. a pastor, either I should say a pastor who is hired and retained by the legislature or a pastor who is a volunteer and invited to give the prayer. But those were not involved in Town of Greece or Marsh, right? Those did not involve the actual legislators. Those did not involve the actual legislators. But if you look at the Marsh decision, how it started was it said legislative prayer is consistent with this country's traditions and as such is permissible and now we look at the specific practice here. That's how Marsh started and what Marsh then went on to say is the practice here, i.e. of a specific, excuse me, of the legislature as a whole retaining and paying a Presbyterian minister in that case for 16 years on an exclusive basis did not violate that practice. That seems to me more of an entanglement with the church when the legislature is actually paying the church on a 16-year basis and the same church for 16 years as opposed to, and that was a Presbyterian minister, but... And, Your Honor, I think I agree with you obviously and the district court also agreed with you. What the district court held, one of the basis of the district court's holding was it would be strange constitutionally and nonsensical to allow the exact same prayers to come from a minister or a pastor retained by the legislature, i.e. an agent of the legislature, and not allow those exact same prayers to come from an individual legislator. And so with respect to... Do you not see a distinction between having someone and saying a prayer versus the person who is about to decide your petition making the prayer? I respectfully don't when you look at it in this way, Your Honor. First of all, an individual commissioner has no authority whatsoever. It is only the commission as a body which hears grievance, and it's nine separate commissioners. So it's only a majority as a whole which does it. Secondly, Your Honor, I don't... So it depends on whether your vote is dilutable based on the size? I would struggle with that analysis because this is a board that together is considering petitions, and one assumes the voice of one would be heard and listened to by the others, particularly if you have prayers that are rotating regularly and are in the same specific tradition. So don't you... Kent, do you see a distinction there? Again, Your Honor, I think... I see the distinction, but I think it's a distinction that actually supports our position because in our position, under your circumstances, five out of the nine commissioners, and I'm just going to use commissioners here, could... Let's say there is a diverse board, and to go to the idea that all our commissioners are Christian, that is not in the record. What is in the record is the prayers themselves, and I'll come back to that. Weren't all the prayers... I'm sorry? Weren't all the prayers Christian? No, they were... They didn't all refer to Jesus? No, Your Honor, and I have the statistics to show those. I'm sorry, who would you like me to answer first? Answer Judge Strange first because she asked first. I'm sorry. With respect to under your scenario, using a Presbyterian minister, if we had just five Presbyterians on the board and four Muslims, Jewish people, Catholics, the majority could appoint a Presbyterian on vote who would then become the sole, and paid, the sole voice of government agent for purposes of giving invocations. However... But no matter what, appointed, paid, free, that person is not deciding the petitions before the board. No, but the five people who appointed him are. But it's the action of directing people to rise and assume the reverent position that I think they're objecting to, and that occurs whether the commissioner itself gives the prayer or whether the paid chaplain gives the prayer, right? That is true. And in fact, in town of Greece, the exact same arguments were proffered that the ministers, or the ministers in that case, the Christian ministers in that case, were saying, please rise. We're facing the audience and not facing the commissioners. And while the dissent found that to be a moment, the majority did not. The majority found that to be part of the standard, solemn, ceremonial part of a commissioner's meeting. Now... Before I ask my question, why don't you complete your answer? With respect to your question, Your Honor, we set forth in our motion for summary disposition the prayers and the invocations given over a two-year period, which was prior to the motion for summary disposition, and... Summary judgment. I'm sorry, summary judgment. I go back and forth, too, between the statements. I apologize. In summary judgment, there were 31 member-led prayers on record between 2011 and 2013. Of these 31 prayers, 29 of the prayers, now remember, Amicus's argument here is that we were misusing the prayer opportunity to prophetize to the public as opposed to the commissioners using it for themselves to gain wisdom or to seek guidance. Of those 31 prayers, 29 expressly requested guidance or wisdom in performing commissioner or legislative duties. 20 sought protections of the troops, first responders, farmers, or the ill or deceased members of the community. No prayer preached conversion, denigrated nonbelievers, or threatened damnation. In one third of the prayers were started with a please stand or please bow your heads. Two thirds of the prayers were not, at least based upon the record. And, going to the... Finally, getting to your point, Judge Moore, I would agree that the prayers given, the invocations given, were the Judeo-Christian tradition, but they definitely were not exclusively tradition. Only 13 of the prayers mentioned Jesus. And remember, 13 out of 39. Only 13 out of... Excuse me, 31. 13 out of 31 mentioned Jesus Christ or the Holy Spirit. Most of the prayers... The other prayers refer to a more, I don't want to say generic deity, but God, Lord, the things which the plaintiffs in Greece were trying to get the board to limit themselves to. That is what was done. And the district court undertook the fact-sensitive analysis and the fact-sensitive balancing that is required, and which I believe is required within the parameters as to whether or not there is coercion, prophetizing, threats of damnation. And the court found... Excuse me. The court found them to be respectful in tone and benign in message, not coercive, and that they neither chastised dissenters nor attempted a lengthy disquisition on religious dogma and were within the spirit of solemn, respectful prayer approved by Marsh. And I think, Your Honor, if you focus on the prayers and the prayer opportunity, which I think is the lesson from both Marsh and Greece, is you focus on, over time, a factual analysis of the prayer opportunity. These prayers are, by any standard, not violative of... And so you would not look beyond that to other statements from the board? So if you pray right, then someone comes before you and has a petition, a board member could look down and say, Okay, heathen, make your argument. And that would be just completely appropriate? No, I'm not saying that that would be appropriate, Your Honor, but that's not the facts in this case. Well, no, I think what I'm struggling with is the test. I want to understand whether you think there is one kind of totality of the circumstances test that we must look to as opposed to having an initial... I'm feeling like, and correct me if I'm incorrect, what I'm hearing is that there is this beginning coercion test, and if you don't violate it, case is over. You don't look at anything else. My understanding is that there are more circumstances that must be examined. I think we talked earlier about directions to participate, which may or may not be considered part of the prayer, whether exploitation of a policy or refusal to expand the policy or disparagement of an individual of a different faith. Those may not occur within the body of the prayer. So articulate for me how you understand this test to function. I believe that taken as a whole, the test would function that the prayer opportunity as a whole passes the test as long as it does not denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion. In the context of the prayer or in the entire context of the way the board addresses the public that comes before them? I think absent actual conversion, I said conversion, excuse me, coercion, proof of actual coercion from the board, I think you focus on the prayer context and the prayer opportunity. If there is evidence of actual coercion or retaliation, then that was something that could properly be considered as part of the opportunity as a whole, but the fact is that you start with the prayer opportunity and whether that has been abused. And in this case, I respectfully submit that we're not even close to the line of abusing this prayer opportunity. Does the record show that there was an effort by anyone to broaden the scope of the prayers? In other words, to have someone other than Christian commissioners deliver the prayers? No. Two things. When the lawsuit was filed, it was pre-Greece. And the challenge at that point was sectarian prayers under Allegheny. And there was some discussion at that point as to, in terms of lawsuits avoidance and waiting for Greece as what should occur. But those were more in terms of what should occur later. But I want to point out to your honors, because it's unique to Michigan. I think it's unique to Michigan. I thought there was record evidence that commissioners expressed negative views about having other people give the prayers. I don't believe that there is, your honor. Not record evidence. That they were quoted as saying that they didn't. Amicus brought into this case newspaper articles and statements that were not part of the record below. I don't believe that was part of the record before the district court. How do you maintain? What is the record maintained at the Jackson County Board of Commissioners regarding their meetings? Well, it's three things, your honor. First of all, there's official minutes, which are required under our law to be kept. There are then audio tapes and video tapes of each meeting. Now, a couple of the tapes were corrupted, and it shows it in our exhibit. But for the vast majority, every single meeting is videotaped and audiotaped and available online. Okay, and you place that, the county places that online? Yes, the county places that online. Okay, so that's your official record. Yes, your honor. So another question that I had is there is commentary in the briefs about one of the commissioners turning his back when the plaintiff here was making statements or comments at one of the meetings. Is that in the record, and is that correct? That is in the record in that that is something that plaintiff alleged and is in his complaint. The actual record itself does not show the board and there is no evidence in terms of the record as to whether that assertion is true or not, in that the tape goes to the speaker in terms of the camera. So when Mr. Bormuth was speaking, it goes to him. When he finished speaking, it goes back to the board. When it went back to the board, it did not show anyone with their back turned. But in terms of what occurred, it is in the record that that was Mr. Bormuth's assertion. However, I would like to point out, and this goes to two things. One is the idea that is being advanced here is that only the commissioners get to give their religious views, and that is a total misnomer under Michigan law, at least on the local level. Well, did anyone other than the commissioner give the prayer? They did not give the prayer, but during what's called call to the public, members of the public are permitted to stand up, and as long as it does not breach the peace, allowed to address any topic that they desire for up to three minutes. Mr. Bormuth uniformly and repeatedly used that opportunity to give his views on his prayers to, excuse me, on his religion, to espouse his religion, and not constrained by the same things, the legal constraints on the commissioners, to denigrate other religions that he didn't agree with. On your official record, the audio and videotapes, I have seen some in which one of the commissioners is calling Mr. Bormuth a nitwit. I mean, isn't that denigration at an official meeting? Well, I guess the question is, is it denigration based upon his nonparticipation in the prayers, or is it denigration based upon the way in which he is interacting with the Board of Commissioners? But isn't that a fact question that would preclude summary judgment? I don't think so, Your Honor, because it is an established fact that both sides agree with, and quite frankly, taken as a whole. Both sides agree that the nitwit comment was made. Well, if it's on the record. It's on your official record. If it's on the record, then we all agree, just like we agree as to what every single prayer says. But you said there was a fact question as to whether the nitwit comment was being made because of the raising of the religious issue or some other reason. Yes. And my question then is normally when there's a fact question that is material, that that precludes summary judgment. So why not here? Because I don't think that that, even if that statement were taken, that that in of itself by one commissioner passes the coercion test or would indicate any type of legal coercion based upon his failure to participate in the prayer opportunity as given by the Board of Commissioners. This was, you can refresh my recollection, but my recollection was that the other commissioners did not stop the one from calling Mr. Bormuth a nitwit, and that the other commissioners, and that Mr. Bormuth also has the point that he was not appointed to one of the commissions that is in the record, and a point that he was trying to supplement the record for, that he was not appointed to another commission type entity. Correct. So wouldn't all of this point to there being at least a question of fact as to whether or not there was retaliation, a.k.a. discrimination against him on the basis of his religious opposition to the practice of the commissioners undertaking this prayer? I would say that those isolated instances do not rise large enough to establish coercion, and they were explained, at least one of them, the turning the back aspect was explained by the judge as a single person's probably not appropriate referral to the way he was being addressed, or how they were being addressed, because during that conversation, Mr. Bormuth went off on that Christianity has no value and that it's idiotic and not part of the tradition. If we put it in the context of this hearing, if one of us turned our back when you're making an argument because we didn't like it, that would seem to be a rejection of your argument, whereas we're engaging, and that's true with every council and every participant that we have here, that we try to engage and try to figure out where to go, whereas turning the back is a pretty much significant rejection of somebody's viewpoint. Well, Your Honor, and again, even if it's done by one individual, it's the board as a whole that matters, and in this case, there is no evidence that the board as a whole, which is the legislative body, undertook any type of action. Except to deny him appointment to the one commission that's definitely within the scope of the record. Well, except it's within the scope of the record in that he alleges it. It hasn't been established. Right, so why not have a trial? In other words, why isn't there a fact question? You say it hasn't been established. I would assert, Your Honor, that again, going back to the coercion analysis, as to what was alleged in this case, remember, this started as a challenge to the nonsectarian prayer nature, and then Greece came out and it kind of morphed into this coercion type of analysis. But the fact still remains is that what he was asking for is that, and what's in his prayer for relief, is that the board of commissioners stop making any reference to God, Jesus, and stop saying prayers. There's nothing about in his prayer for relief asking him to be appointed or alleging some type of retaliation in his prayer for relief in the complaint. But to go back, I think if you do what the district court judge, and you look at the prayers, either taken as a whole, and you compare them to the prayers that were passed in the city of Greece, and when I say passed, were authorized in the city of Greece and in chambers, the prayers do not even... Don't those cases also say, this is not an issue of disparagement, or this is not an issue of reprisal, or were those things present, this might be a different case? So the question becomes is, are we in that different case? Because you have a number of commissioners either saying disparaging in a response, and I think when you look at some of the discussion in particular of the opportunity to implement a more open policy, several of the commissioners say this is nothing more than an attack on Jesus Christ, or this is nothing more than an attack on my faith. Doesn't that in fact put it as a contest between the members of the council to whom the town, including Mr. Barmuth, petition, and the commission itself? Is this not one of the other factors that Town of Greece teaches, and Marsh also, must be considered? I would say, Your Honor, that Greece and Marsh and the predecessors focus on the prayer opportunity and whether it is being abused. But don't they focus on discrimination too, Counselor? I mean, that was my question earlier. Do you get to say a prayer that's safe, and then you get to turn to somebody else of another faith when they come before you for a petition or a request and say to them, No, you're not the same faith I am. I'm not giving you that. That's not in the prayer they said, but it is the effect and the action that they took. So that's why I'm struggling with your test. I don't think we just get to pick up the body of the prayer. We do have to look at that. But then we're looking at the totality of the circumstances. Do we have somebody on the record saying, I'm not appointing this person to the wastewater board because this person doesn't agree with my faith. Wouldn't that, in fact, do exactly what Marsh and Town of Greece say is prescribed? Your Honor, if that were the case, I could see that being actual coercion. The case here is Mr. Bormuth alleges that that was the reason, but the Board of Commissioners, there is no evidence that the Board of Commissioners considered anything other than the experience and in terms of its one appointment that's on the record, the experience and the qualifications in its collective judgment. There is no indication, as you said, that there was a commissioner or anything on the record going to any improper motivation. Then the question to us is does the comment about Mr. Bormuth being a nitwit or the statements that he's just attacking me or he's attacking my faith or he's attacking Jesus Christ, then those have to be, you say none of those rise to a dispute of material fact has to be your position. Am I correct? Yes, and especially when it's only done by an individual commissioner. Even if it's done by three or four people on the commission individually? Your Honor, if it's done by an individual commissioner, yes, or two individual commissioners, the individual motivations of a legislator in their actions are not imputed to the legislator as a whole. What if it were a majority of the commissioners who had made individually such statements? Would that then mean that the statements could be attributed to the Board of Commissioners as a whole? If it was within the context of the legislative decision, yes. If it was in the context of the legislative decision at issue, yes, but generally, well, when I say the legislator as a whole, it's not single, Motivations or statements of a single commissioner are never attributable to the entire legislative body in Michigan. An individual commissioner has no authority to bind, to speak for, or to even be deposed regarding his motivations for legislative actions because an individual commissioner is irrelevant.  Hypothetically, if one commissioner said, I am not going to vote in favor of Joe Smith because Joe Smith is Hindu, and then the vote is taken and the commission votes five to four against Joe Smith, with the fifth vote being this commissioner who made the statement, you would say then that the law is clear, and I don't know, I guess you're relying on Michigan law, that that statement as to what that commissioner's reason was is irrelevant. That it's not attributable to the motivation of the rest of the legislature in making their vote. Just like a member of Congress, one member of Congress might have a reason which might not be the loftiest for making a vote, and 59 might have the loftiest of reasons, and the one person's improper motivation does not become attributable to the rest of the people who vote for something. And do you have a case or something that you'd like to send us to look at for that principle? I can, Your Honor. Thanks. Absolutely. Thank you. We've taken you over your time, too. Mr. Bormuth. Quick rebuttal, Your Honors. First, in the case where Commissioner Leck made faces of disgust and then swiveled his chair completely around with his back to me, I was quoting Thomas Jefferson. I was not giving forth my own opinions about my own religion. I was quoting one of our primary authors of the Bill of Rights, the person who pushed Madison to get that through Congress. With regard to coercion, the Court in Town of Greece did say the analysis would be different if town board members directed the public to participate in the prayers. With regard to Town of Greece, they say, nothing in the record indicates that town leaders allocated benefits or burdens based on participation in the prayer or that citizens were received differently depending on whether they joined the invocation. In no instance did town leaders signal disfavor toward non-participants or suggest that their stature in the community was any way diminished. But they've done those things to me. With regard to the Solid Waste Planning Committee, I had worked three years on closing the Jackson County Resource Recovery Facility. The month before I addressed the commissioners on their prayer practice, I got an eight-to-one vote from the commissioners in favor of closing, with only Chairman Shotwell objecting. The next month, when I went back and I challenged their prayer practice, when it came time for appointments to the board, all the commissioners who had previously been securely in my favor voted against me. My name was not even put up for nomination. I also want to mention very quickly that even in the cases where the people did not specifically say, in the name of Jesus Christ, what they say as a euphemism for that is, in your holy name. Every prayer has been Christian. I also want to mention the Treaty of Tripoli, simply because Article 6, Section 2 makes this the supreme law of our land. And it says that the government in the United States is not in any sense founded on the Christian religion. And I believe that this treaty, ratified by the Senate and signed into law at that time by John Adams, faithfully reflects the opinion of the founders that no government official, in the course of their official duties, should bind together Christianity and the government of the United States. And that is exactly what these commissioners are doing. I wanted to add, finally, it hasn't been mentioned, but on the record as well, there are these young children that are invited to give the Pledge of Allegiance, directly following this invocation. I believe this is a constitutional violation of a serious dimension. On October 21st, for instance, 2014, this is the prayer by Phil Duckham. It's the only prayer that really steps over the line. Most of the others are benign. I'm not challenging the content of the prayer, other than in the name of Jesus Christ, the fact that they're all Christian, and so there's a majority religion. But Phil Duckham said, we pray for all the Christians worldwide who are subject to killers and extremists. Ignored all the other people, all the other faiths that are subject to killers and extremists. And then the Springport High School parliamentary procedure team gets up, leads the Pledge of Allegiance, and then demonstrates their parliamentary procedure abilities. These are our future governmental leaders. What does it show when a government official prays for all the Christians worldwide in the name of Jesus Christ, and then these young people get up and demonstrate their skills? Your Honors, this is an outrageous violation of the First Amendment, and I believe it should be dealt with separately, and that there should be a separate injunction preventing this. I'll take any questions at this point. Thank you very much. Thank you, Your Honor. I want to address the county's argument that individual acts of coercion or retaliation shouldn't be attributed to the commission. First of all, I think it's clear the commission acts through its commissioners, and even if you're counting them up, January 2011, all stand, coming from Commissioner Curl. March 15, 2011, everyone please stand. Please bow your heads. That's Commissioner Duckham. August 21, 2012, Commissioner Williams, please rise. June 18, 2013, Commissioner Polsek, all rise. August 20, 2013, Commissioner Elwell, please rise, plus Chair Shotwell repeatedly delivering commands to rise and assume a reverent position. So that already gets you to six out of nine, and while that may not be an official declaration of the commission, if I'm advising someone who's about to petition the commission, I would certainly advise them to not disobey the instructions that are provided by multiple commissioners. And I think the same goes for the retaliation. If I were arguing before, let's say, a different panel of a court, and one judge in the middle of my argument called me a nitwit, another judge turned around, and the third judge accused me of attacking our Lord and Savior Jesus Christ, again, that may not legally amount to a published decision of that court, but I certainly, the next time I argue before that panel, would think twice about making those arguments. And I think that goes to, if you look at Town of Greece, it's ultimately a very practical decision. It is looking at circumstances and determining, would a citizen who's attending feel compelled to participate in a prayer that might go against their conscience? And when commissioners, including the Chair, are repeatedly asking not just to stand respectfully, but to assume a reverent position, in other words, make an outward manifestation of prayer, when it's being done in close quarters with few people there, and when objectors are disparaged, are visibly retaliated against, I think all of those things would make someone think twice about not going along. At the very least, I think Judge Moore is right that there's a factual dispute, and the case should be remanded. Thank you. Thank you all for your argument. The case will be submitted, and we'll issue a decision in due course. The court will take a brief recess.